**In re BLAIR.**

**BLAIR v. COEN.**

No. 9538.

United States Court of Appeals
Seventh Circuit.

Nov. 9, 1948.

Rehearing Denied Dec. 22, 1948.

Elmer McClain, of Lima, Ohio, and Leigh M. Kagy, of East St. Louis, Ill., for appellant.

Homer C. Coen, of Elmhurst, Ill., and McCawley Baird, of East St. Louis, Ill., for appellee.

Before MAJOR, KERNER and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order of the District Court, entered October 1, 1947, dismissing debtor's petition in a proceeding under Sec. 75 of the Bankruptcy Act,

11 U.S.C.A. § 203. The court held it was without jurisdiction for two reasons, (1) that the debtor did not have any property interest in the land scheduled at the time of the commencement of the proceeding which could be administered under Sec. 75, and (2) that the debtor was not a farmer within the meaning of sub. r, of said section at the time of the filing of her petition.

The debtor and her attorney appeared before a Conciliation Commissioner on February 19, 1942, for help and assistance, and the Commissioner prepared a petition and schedules for a composition and extension of time to pay debts. She failed to sign the petition and Schedules A and B. She did sign the separate sheets of the schedules, and she signed the purported oath given by the Conciliation Commissioner to the petition and to the schedules. At that time she paid the Commissioner the necessary filing fee.

The papers were sent to the Clerk of the District Court on March 5, 1942, but the Commissioner neglected to enclose the filing fee. The papers were returned to the Conciliation Commissioner on March 7, 1942 by the Clerk with the statement that (1) there was no fee enclosed, (2) that the petition and schedules were not signed, (3) no notary seal had been placed on any of the documents. Both the Conciliation Commissioner and her attorney endeavored to locate the debtor but were unable to do so for a period of more than four months. Finally, when located, she supplied her signature which had formerly been omitted from the petition and schedules, which were then sent by her attorney to the court for filing. At the same time the Conciliation Commissioner sent to the Clerk the filing fee which he had previously failed to remit. Neither the petition nor the schedules were verified anew and bore the same date as when originally executed. The petition and schedules were filed by the Clerk on June 24, 1942.

The debtor in Schedule B claimed as her property certain described land, and with reference thereto stated: "The above land subject to mortgage to Ed Rudolphi, which was foreclosed in the Circuit Court of Richland County, Illinois, and sold under decree of that court the sale having been March 15th, 1941, and the Equity or [of] Redemption only being owned by Petitioner."

As the schedule notes, the property claimed was sold under a mortgage foreclosure sale March 15, 1941, and a certificate of purchase was issued to the purchaser, Ed Rudolphi. Under the Illinois law, the debtor (mortgagor) had one year in which to redeem from such sale and her creditors had an additional three months. No redemption was had and her right to redeem expired on March 15, 1942, and that of her creditors on June 15, 1942. On June 16, 1942, Rudolphi presented his certificate of purchase to the Master and requested a deed, which was issued to him on July 9, 1942 and recorded the following day, July 10, 1942. Subsequently, Rudolphi assigned his interest in the property to the instant appellee. The debtor's contention that she was the owner of a property interest of which the court acquired jurisdiction is predicated solely upon the interest which she claims by reason of her right of redemption. This in turn is dependent, so we think, upon the date on which the court acquired jurisdiction, that is whether it was on February 19, 1942, when the debtor first appeared before the Conciliation Commissioner, or June 24, 1942, when her petition and schedules were filed with the Clerk of the court. As already noted, the period of redemption expired prior to the latter date. Much is said relative to the defective petition and schedules as she originally left them with the Conciliation Commissioner. We are of the view that we need not decide whether her petition and schedules were of no effect because of her failure to sign or whether it was necessary that the petition be signed under oath, and if so, whether the Conciliation Commissioner was an officer authorized to administer the oath. The fact is that the petition was not filed with the Clerk of the court until more than four months later and that irrespective of the reason for this delay, the question remains as to whether the court acquired jurisdiction of the debtor and her property on February 19, 1942 or June 24, 1942. The debtor's contention that the court acquired

jurisdiction of her property on February 19, when her petition and schedules were left with the Conciliation Commissioner is predicated upon the language of sub. n of the Act, which provides:

"The filing of a petition or answer with the clerk of court, or leaving it with the conciliation commissioner for the purpose of forwarding same to the clerk of court, praying for relief under this section, shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court * * *."

No case is cited and we know of none where the precise question involved has been raised or decided. There are many cases where the filing of the petition with the Clerk of the court has been treated as the time of the acquirement by the court of jurisdiction of the debtor's property. Typical of such cases is Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370, where the court discusses and interprets sub. n. On page 442, of 308 U.S., on page 348 of 60 S.Ct., the court states:

" * * * that no proceedings after the filing of the petition should be instituted, or if instituted prior to the filing of the petition, should not be maintained in any court or otherwise."

On the following page, the court states:

"In harmony with the general plan of giving the farmer an opportunity for rehabilitation, he was relieved—after filing a petition for composition and extension—of the necessity of litigation elsewhere and its consequent expense."

There is some basis for the argument that the language upon which the debtor relies standing alone furnishes at least colorable support for her contention. Even so, however, such support appears to be more than offset by another provision in the same paragraph, which states:

"In all cases where, at the time of filing the petition, the period of redemption has not or had not expired * * * the period of redemption shall be extended * * * for the period necessary for the purpose of carrying out the provisions of this section."

Thus, according to this language, the period of redemption is extended only where such period has not expired "at the time of filing the petition". There is nothing in this language to indicate that it was the intention of Congress to extend the period of redemption upon "leaving it [petition] with the conciliation commissioner". This language is directly applicable to the instant situation where the only property claimed was the right of redemption.

The general orders in bankruptcy promulgated by the Supreme Court, which have the effect of law, indicate that jurisdiction is acquired when the debtor's petition is filed with the Clerk of the court. Order 50(2) relating to farm debtor proceedings provides:

"The clerk shall not accept the petition unless it is accompanied by the filing fee and the schedules, which shall be in duplicate. Upon the filing of the petition the judge shall enter an order either approving it as properly filed under the section, or dismissing it for want of jurisdiction. If the petition is approved, the case shall be referred * * * to a conciliation commissioner * * *."

The same order (11) provides:

" * * * the conciliation commissioner shall have all the powers and duties of a referee in bankruptcy and the general orders in bankruptcy shall apply to proceedings under said section."

It has been held that a Referee has many of the powers of a court but, so far as we are advised, he has no such powers until a petition has been filed in court and referred by the court to the Referee, and it seems reasonable to think that the powers of a Conciliation Commissioner are likewise limited.

It appears that the congressional purpose was to make the Conciliation Commissioner an advisor and helper to farmers in financial distress so as to obviate the necessity for the employment of an attorney. Sub. q expressly evidences such a purpose, and it is our view that the language in sub. n upon which the debtor relies, "leaving it [petition] with the con-

ciliation commissioner for the purpose of forwarding same to the clerk of court," was merely in aid of the purpose expressed in sub. q. The Conciliation Commissioner was thus required on request to assist the farmer in preparing and filing a petition, and the Conciliation Commissioner was authorized to accept the petition, not for the purpose of giving the court jurisdiction of the debtor's property but for the purpose as stated of "forwarding same to the clerk of court". It is our view that the court acquires no jurisdiction either of the debtor or its property until a petition is filed with the Clerk of the court, and it follows that there is no tolling of the period of redemption until such time.

The debtor also argues that even though the court did not acquire jurisdiction of her property until June 24, 1942, she still had a property interest in the equity of redemption because the Master-in-Chancery did not execute and deliver to the holder of the certificate of purchase a deed until July 9, 1942. As already noted, however, the holder of the certificate of purchase applied to the Master and requested a deed on June 16. The contention of the debtor in this respect is without merit in view of the decision of the Supreme Court in State Bank of Hardinsburg v. Brown, 317 U.S. 135, 63 S.Ct. 128, 87 L.Ed. 140. Under that decision, the issuance of the deed by the Master was only a ministerial act and any delay on his part in executing the deed could not restore to the debtor what she had lost by the expiration of the period of redemption on June 15, 1942. At the most, the debtor after such expiration had nothing more than a naked legal title which was of no benefit to her in the instant proceeding.

Furthermore, even though the debtor had a property right in the equity of redemption at the time the court acquired jurisdiction, the order of dismissal for want of jurisdiction was proper if the debtor at such time was not a farmer within the definition of sub. r of the Act. In this respect the court made a finding as follows:

"During and before 1941 the farm was producing very little in the way of income for debtor and many months before February 19, 1942, the debtor had begun absenting herself from the premises in question by far the greater portion of her time for the purpose of securing and following employment elsewhere and has continued that practice continuously from that time until the present. Beginning in 1941 she had a position that required her to travel in Michigan, Ohio, Indiana and Kentucky. When her traveling position was not available she had other employment or was otherwise engaged outside Illinois. During and since 1941 the debtor has spent comparatively little of her time on the farm and the farm has been the source of very little or no income to her. Since long before February 19, 1942, the greater portion of her income by far has been derived from employment elsewhere and that has continued to be true up to the present time. During the time the debtor has been away from the farm as aforesaid up to the present her elderly husband has made his home on the farm but neither he nor she has produced any substantial income therefrom and neither has paid anything to the conciliation commissioner for creditors. No progress whatever has been made toward rehabilitation of debtor as a farmer. During the same period the debtor has received a substantial income from other sources as the fruits of her personal efforts in activities other than farming. Within the meaning and contemplation of Section 75 of the Bankruptcy Act the debtor was not a farmer at the time she had her petition prepared by the conciliation commissioner and left it with him with the filing fee on February 19, 1942. She was not such farmer when her completed petition, accompanied by schedules duly executed and by the filing fee, was accepted and filed by the clerk of the court on June 24, 1942 and has not been such farmer at any time since the year 1941. The debtor was not personally bona fide engaged in farming for many months prior to or at any time since February 19, 1942 in any sense referred to in said Section 75 or in paragraph (r) thereof. For some time before February 19, 1942 and on that date and at all times since the principal part of the debtor's income has been derived

834

from sources and activities other than farming operations."

Upon the fact thus found, the court concluded that the debtor was not a farmer within the meaning of the Act at the time she instituted the instant proceedings.

The court heard numerous witnesses bearing upon the issue as to whether or not the debtor was a farmer, upon which the above finding was predicated. No good purpose could be served either in reviewing this testimony or the numerous cases which have discussed and decided who is a farmer within the meaning of the Act. We have read the testimony and have no doubt but that the court's finding has ample support. Such being the case, we accept the finding and it follows that we agree with the court's conclusion on this phase of the case.

The order appealed from is, therefore, Affirmed.